In the Matter of the Estate of John Fitzgerald.

*April 5 — May 31, 1883.*

ESTATES OF DECEDENTS: ACCOUNTS: EVIDENCE. *(1) Moneys furnished for support of heirs. (2, 3) Examination of administrator: transactions with deceased heir or agent. (4) Commissions cannot be withheld.*

1. An administrator who, without authority from the probate court, furnishes the means to support and educate the heirs of his intestate, does not thereby charge the estate, but merely makes himself the creditor of such heirs. [Whether the court may allow him to reimburse himself for such advances out of the estate, before distribution, is not determined.]

In the Matter of the Estate of John Fitzgerald.

2. Advances so made not being properly matters of account between the administrator and the estate, the statute (R. S., sec. 3927) providing for the examination of an administrator concerning his account does not apply to charges therefor. But where the sums advanced were paid to an heir or his agent, since deceased, secs. 4069, 4070, R. S., are applicable; and the heirs or their representatives are the opposite parties within the meaning of those sections.

3. The effect as evidence of the testimony of an administrator under sec. 3927, R. S., somewhat considered.

4. The court has no discretion, under sec. 3929, R. S., to withhold commissions from an administrator because of his neglect of duty.

APPEAL from the Circuit Court for *Milwaukee* County.

The appellants, *Ellen Burt* — formerly *Fitzgerald* — and *Sarah Fitzgerald*, and the deceased wife of the appellant *Charles E. Crain*, to wit, Mary Crain, formerly Fitzgerald, were the only surviving children and heirs at law of John Fitzgerald at the time of his decease, which occurred in 1855. His widow also survived him. Fitzgerald was a resident of Milwaukee county, and owned eighty acres of land in that county at the time of his death. He died intestate. His daughter Mary was then eleven, Sarah seven, and Ellen five years old. The history of the proceedings down to the trial in the circuit court is correctly stated in the printed case, as follows:

" Soon after the death of Fitzgerald, due proceedings in that behalf having been had, his widow was appointed by the county court of Milwaukee county, in probate, administratrix of his estate, and duly qualified and continued to act as such until she died, in February, 1861. The said county court thereupon, on the 1st day of March, 1861, appointed *Maurice Fitzgerald*, a brother of said John, administrator *de bonis non* of said estate, and he immediately qualified and entered upon the duties of his office. The estate then consisted of only these eighty acres of land, which were subject to a mortgage to the state of Wisconsin, made to secure the payment of $500 and interest at seven per cent.

"On November 23, 1861, pursuant to the order of said county court, *Maurice*, the administrator, sold the farm to one John Elmers for the sum of $2,720. The terms of the sale were one fourth down, balance in three years, with interest at seven per cent. The whole amount was paid to the administrator in instalments from time to time, with interest on the deferred payments, until the whole was paid, in January, 1868, whereupon the administrator satisfied the mortgage of record. From the proceeds the administrator paid the interest on said mortgage of $500 to the state, from January 9, 1862, until April 25, 1864, when the principal was paid.

"Mary Fitzgerald married *Charles E. Crain* in 1873, and died the following year, without issue and intestate. *Charles E. Crain*, her husband, was afterwards appointed administrator of her estate and duly qualified, and entered upon the discharge of the duties of his office, which he still holds.

"The administrator, *Maurice Fitzgerald*, failed to file any account of his administration, and on the 7th day of November, 1879, upon the petition of said *Ellen* and *Sarah Fitzgerald*, the said probate court issued a citation to said administrator, requiring him to account to the court for the property he had received as administrator *de bonis non*. The administrator thereupon filed an account on or about the 12th day of February, 1880. Thereafter came the petitioners, *Sarah* and *Ellen*, and filed their objections to sundry items of the account. The cause was thereupon set for trial by the said probate court, and tried by that court in June, 1880. The probate court rendered judgment, disallowing, in part, the account of said administrator, and from that judgment the administrator appealed to the circuit court of Milwaukee county."

The matter was tried in the circuit court, and the account of the administrator was stated by the court. The account so stated shows an unexpended balance of the estate in the

hands of the administrator of $100, for which sum, together with interest thereon from January 3, 1868, and $50 costs and disbursements, the administrator was held chargeable. It was so ordered and adjudged by the court.

This appeal is by the two surviving daughters, and the administrator of the estate of the deceased daughter, from such order and judgment. The case is further stated in the opinion.

For the appellants there was a brief by *E. Mariner & Frank M. Hoyt*, and oral argument by *Mr. Hoyt.*.

For the respondent there was a brief by *Stark & Brand*, and oral argument by *Mr. Stark.*

LYON, J. The account of the administrator with the estate of John Fitzgerald, as stated by the court, consists of a large number of items, to the allowance of most of which no exceptions were taken by the appellants. Many of those not excepted to are charges by the administrator for moneys advanced by him for the education, support, and maintenance of the three minor children of John Fitzgerald from 1861 to 1868. No guardian was ever appointed for either of them, and the advances were chiefly made to the eldest daughter, Mary, who seems to have kept the children together and to have had the care of them. The items of this class not objected to are covered by receipts given by Mary to the administrator. The court allowed several charges of the same class, for which the administrator was unable to produce any vouchers. These consist mainly of charges for money paid by Elmers, the purchaser of the farm, on account of the purchase money therefor, directly to Mary, and retained by her and expended for the support of the family. The only evidence to support these charges was the testimony of the administrator. He testified that being absent from Milwaukee the most of the time during the years 1864 and 1865, he authorized Elmers to make payments on the farm to Mary;

that Elmers reported to him he had paid Mary in February, 1864, $83; in July of the same year $126; in January, 1865, $135; and in May, 1865, $157; that Mary told him Elmers had paid her the above sums; and that thereupon he treated those payments as made to himself, and allowed them to Elmers on the purchase money for the land. He further testified that Elmers delivered to him receipts of Mary for those payments, when they settled, but that such receipts were lost. It appears that Elmers is dead.

The foregoing is substantially all of the testimony in support of the charges for money paid to Mary by Elmers. It was all duly and seasonably objected to on behalf of the appellants on the ground that it related to transactions with the deceased Mary, acting in her own right and as agent for her sisters, and was inadmissible under the statute. The testimony was admitted, and the charges in the administrator's account to which it was directed were held to be established by it, and were accordingly allowed. The most important question presented by this appeal is whether the testimony was competent or not.

It was just now suggested that the objection to this testimony was based upon the statute. It is provided in sec. 4069, R. S., that no party shall be examined as a witness in respect to any transaction or communication by him personally with a deceased person, in any civil action or proceeding in which the opposite party derives his title or sustains his liability to the cause of action from, through, or under such deceased person. The next section provides that no party shall be examined as a witness in respect to any transaction or communication by him personally with an agent of the adverse party, when such agent is dead. The statute contains exceptions to the application of the rule, but these have no significance here, and need not be stated. On the other hand, another statute, which was enacted long before that which allows a party to be a witness in his own behalf in any

case, provides that an executor or administrator may be ex-
amined on oath upon any matter relating to his account.
R. S. 1849, ch. 71, sec. 9; R. S. 1858, ch. 102, sec. 9.  Such
was the law when the statute which makes a party a com-
petent witness in his own behalf was first enacted, and such
continues to be the law.  R. S., 963, sec. 3927.  The language
of the present statute is: "He [the executor or adminis-
trator] may be examined on oath by the court upon any
matter relating to his account and the settlement of the es-
tate."

The learned counsel for the administrator argues that the
statutes above cited (R. S., secs. 4069, 4070) have no applica-
tion to a case like this, and do not interfere with the power
of the court, fully and without restriction, to examine the
administrator on oath in respect to his account and the set-
tlement of the estate; otherwise the power would have been
dropped out of the statute, or at least qualified or limited in
the revision of 1878 to correspond with secs. 4069 and 4070,
which were first enacted before that revision.  And, further,
that the examination of the administrator must necessarily
have the force and effect of testimony in the proceeding, al-
though he testify to transactions with a deceased person
through whom the opposite party sustains the liability to the
cause of action alleged against him, or who acted as the
agent of such opposite party.  To determine which of these
conflicting positions is the correct one, it becomes necessary
to examine more closely than has yet been done, the nature
of the account which the administrator here interposes really
against the heirs of his intestate, although in form against
the estate of his intestate.

It was not the duty of the administrator, and he had no
authority, to furnish out of the estate of the intestate in
his hands the means to support and educate the heirs of such
intestate.  The court made no allowance for those objects,
nor directed him to make any such expenditures.  In so

doing, he assumed the functions of a guardian of those minor heirs and acted entirely upon his own personal responsibility. Had his transactions been in the form of a loan of money to them, it is not perceived that they would have been essentially different. In substance and legal effect, by advancing money to them he did not charge the estate of his intestate, but only made himself their creditor for the sums so advanced. Having made such advances in apparent good faith, we do not determine whether the probate court, exercising the very broad equitable powers conferred upon it by law, might or might not protect him by allowing him to reimburse himself for such advances out of the estate, before distribution. It is unnecessary to determine this question here, because the heirs do not object to the exercise of that power. They are willing that the administrator should be allowed in this accounting all sums advanced by him to Mary. But they insist that he shall establish the amount of such advances by legal evidence.

Because these disputed charges in the administrator's account are not, correctly speaking, matters of account between the administrator and the estate of his intestate, but are mere personal claims against the heirs of the intestate, in respect to which the relation of creditor and debtors exists between the administrator and heirs, it seems very clear to us that the statute providing for the examination of the administrator on oath concerning his account does not include such charges. Hence, if it be conceded that counsel deduce the correct rule of evidence from the statute, the rule is not applicable to this case. The heirs may well say to the administrator: "You seek to recover your individual demand against us by obtaining an allowance thereof out of the estate of our ancestor in your hands, before the estate is assigned and distributed to us. We do not object to this, but we dispute portions of your claim against us, and insist that you establish it by the same evidence which would be re-

quired had you brought a common law action against us therefor." The views above expressed relieve us from determining the effect as evidence of the testimony of the administrator given upon his examination on oath, in case the court requires such examination. It may be suggested, however, that the object of the statute is to give the court power to compel a discovery by such examination of the administrator, and that probably his statements would have the same effect as evidence as would an answer to a bill of discovery under the old practice. But it is unnecessary to pursue the subject further.

The testimony of the administrator, given on the trial, of the admissions of Mary Fitzgerald that she had received the sums from Elmers in 1864 and 1865, charged in his account, as well as of the contents of the alleged lost receipts therefor, is clearly within the prohibition of the statutes above cited (secs. 4069, 4070) and must be excluded. The appellants are the opposite or adverse parties within the meaning of those sections; the testimony related to transactions and communications by the administrator personally with the deceased Mary, acting therein for herself and as the agent of her sisters; and the alleged liability of the appellants to the cause of action against them here asserted by the administrator is based solely upon such acts of Mary. Excluding such testimony, there remains no sufficient proof to sustain the charges in the account for money paid by Elmers to Mary in 1864 and 1865. There are other disputed items in the account which require brief notice. The two appellants, *Sarah* and *Ellen*, were placed at the school of the sisters of Notre Dame (called St. Mary's Institute) in 1863, and there educated. The administrator paid on account of their expenses there $400 out of the estate. There remains an unpaid balance therefor of $78.45. The circuit court allowed this balance to the administrator in stating his account with the estate of his intestate. This was error. Manifestly

In the Matter of the Estate of John Fitzgerald.

there should be no allowance to the administrator for money which he has never paid, and which the case fails to show he ever became liable to pay.

The account stated by the court contains two charges for money paid to Mary,— one of $19, dated October 15, 1861, and the other of $171, dated January 13, 1868. Both these charges are covered by receipts purporting to have been signed by Mary Fitzgerald, the genuineness of which was disputed. The circuit court evidently found that these were the genuine receipts of the deceased Mary, and we cannot disturb the finding. The court also allowed the administrator $93 for fees and commissions. It is claimed that he should not have this allowance because of his neglect of duty. But the statute seems to be imperative that the prescribed commissions shall be allowed, and it gives the court no discretion to withhold them. R. S., 962, sec. 3929.

There are a few other charges in the account which are disputed, but they are of small amounts, and we are not disposed to disturb or discuss them. Under all of the circumstances of the case we think the court adopted the correct rule of interest, and that the same rule should be applied to the corrected account. The charges which were improperly allowed amount to $549.45. The court found that $100 remained in the hands of the administrator. The judgment should have been, therefore, for $649.45, and interest thereon from January 3, 1868, together with the costs and disbursements awarded.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this opinion. The costs in this court must be paid by the respondent, *Maurice Fitzgerald.*

*By the Court.*— It is so ordered.