In re Valentine's Will.

In re Valentine's Will.

*March 27 — April 14, 1896.*

*Establishing lost will: Parties: Competency of witnesses: Husband and wife: Declarations of testator.*

1. The legatees, devisees, and heirs at law are all parties to a proceeding under sec. 3791, R. S., to establish a lost will, and are therefore incompetent, under sec. 4069, S. & B. Ann. Stats., to testify therein as to transactions or communications by them personally with the testator under whom they claim; and the husbands or wives of such parties, if not themselves parties to the proceeding, are not competent witnesses therein.

2. Where it is established that a testatrix properly executed a valid will, and the same was last known to be in her possession but cannot be found after her death, there is a *prima facie* presumption that she destroyed it with the intention of revoking it; and evidence of her declarations that she had destroyed the will and that she did not have it at the time of her death is admissible in support of that presumption.

APPEAL from a judgment of the circuit court for Marquette county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Proceeding to establish a lost will. The facts are stated in the opinion.

For the appellant there was a brief by *Geo. E. Sutherland* and *John Barry*, and oral argument by *Mr. Sutherland.* To the point that the evidence of the declarations of the testatrix that the will had been destroyed should have been admitted, they cited *Reel's Ex'rs v. Reel*, 1 Hawks (N. C.), 248; *Durant v. Ashmore,* 2 Rich. Law, 184; *Lawyer v. Smith,* 8 Mich. 412, 422, 423; *Evans's Appeal*, 58 Pa. St. 238, 248; *Pickens v. Davis*, 134 Mass. 252; *Collagan v. Burns*, 57 Me. 449; *Gay v. Gay*, 60 Iowa, 415, 419; *Harring v. Allen*, 25 Mich. 505; *Weeks v. McBeth*, 14 Ala. 474, 475; *Betts v. Jackson*, 6 Wend. 181; *Keen v. Keen*, L. R. 3 Prob. & Div. 105; *Patterson v. Hickey*, 32 Ga. 156; *Behrens v. Behrens*, 47 Ohio St. 323, 332; *Tucker v. Whitehead*, 59 Miss. 594, 602; *Sugden v. Lord St. Leonards*, 1 Prob. Div. 154; *Bates v. Holman*, 3 Hen. & Mun. 502; *Card v. Grinman*, 5 Conn. 164; *Tynan v. Paschal*, 27 Tex. 286; *Youndt v. Youndt*, 3 Grant's Cas. 140; *Smiley v. Gambill*, 2 Head, 164; *Staines v. Stewart*, 2 Sw. & Tr. 320; 1 Jarman, Wills (5th Am. ed.), 284, note 8; *Harris v. Knight*, 34 Solicitors' Jour. & Rep. 316; Schouler, Wills, § 403, note, and cases cited; *Denison's Appeal*, 29 Conn. 402; *Minor v. Guthrie*, 4 S. W. Rep. 179; 1 Phillips, Ev. 316; 1 Williams, Ex'rs (4th Am. ed.), 129, 130; Thornton, Lost Wills, § 66.

For the respondents there was a brief by *Fowler & Mc-*

*Namara,* and oral argument by *C. A. Fowler.* They contended, *inter alia,* that it was not error for the court to refuse to admit evidence of the declarations or statements of the testatrix as to the destruction, revocation, or non-existence of the will. Only such declarations are competent to show such revocation of a will as are part of the *res gestœ* of the act of revocation. Cassoday, Wills, §§ 307, 308; 1 Greenl. Ev. § 108; *Ladd's Will,* 60 Wis. 199; *Waterman v. Whitney,* 11 N. Y. 162; *Jackson v. Kniffen,* 2 Johns. 31; *Gay v. Gay,* 60 Iowa, 419. *Mary Morris* was not a party to the action at all. She did not petition, or join in the petition, for the probate of the will. Not being an heir at law, she was not even cited to appear, and her name is not in the record in the proceedings in the county court. The fact that the appellant made her a respondent in carrying the proceedings to the circuit court does not make her a party to the action in any sense in which she was not so in the county court. The trial in the circuit court necessarily proceeded in accordance with the same rules as obtained in the county court. The objection could not have been interposed in the county court. *Dickey v. Malechi,* 6 Mo. 177; *Garvin's Adm'r v. Williams,* 50 id. 206; *In re Storey's Will,* 20 Ill. App. 183; *Tibbats v. Berry,* 10 B. Mon. 473; *People ex rel. Fraser v. Wayne Circuit Judge,* 39 Mich. 198; *Benoist v. Murrin,* 48 Mo. 48; *St. John's Lodge v. Callender,* 4 Ired. Law, 335; *Bradford v. Andrews,* 20 Ohio St. 209. The establishing of a lost will is a matter in which legatees could testify at common law. Lost wills have been established solely on the testimony of a legatee. The legatee being permitted to testify at common law, it would follow that the husband of a legatee might also testify. And if a husband might testify at common law he certainly may testify now. Thornton, Lost Wills, § 119; *Sugden v. Lord St. Leonards,* 17 Moak, Eng. 453; *Finch v. Finch,* L. R. 1 Prob. & Div. 371; *Southworth v. Adams,* 11 Biss. 256; Rapalje, Witnesses,

In re Valentine's Will.

§ 61, notes 1 and 2, and cases cited; *Tucker v. Whitehead*, 59 Miss. 594; *Mercer's Adm'r v. Mackin*, 14 Bush, 34; *Wyckoff v. Wyckoff*, 16 N. J. Eq. 401; *Dickey v. Malechi*, 6 Mo. 177; *Kidder's Estate*, 66 Cal. 487; *Wilmot v. Talbot*, 1 Am. Dec. 374; *Talbot v. Talbot*, 23 N. Y. 17. The interest which at common law disqualified a party as a witness had to appear absolutely. Merely being a party to the suit did not disqualify. The later cases under the common law lay down the rule that the objection to a witness on the ground of interest was not to be favored, and that it lay with the objector to show to a certainty that the witness had a direct and certain interest in the particular suit. A residuary legatee would not therefore be disqualified at common law, for it could not appear until after administration of the estate whether anything would pass to him. *Worrall v. Jones*, 7 Bing. 396; *Hart v. Heilner*, 3 Rawle, 407; *Stockham v. Jones*, 10 Johns. 21; *Birdsall v. Dunn*, 16 Wis. 235; *Strong v. Stevens Point*, 62 id. 263. See, also, *Butler v. Patterson*, 13 N. Y. 292; *Freeman v. Spaulding*, 12 id. 373; *Quin v. Moore*, 15 id. 435; *Schofield v. Walker*, 58 Mich. 100. In any event the appellant was not prejudiced by the ruling of the court allowing Morris to testify. Had the objection been sustained the wife had only to assign her interest to render him competent. A legatee who has assigned his legacy is a competent witness even though, but for the assignment, he would have been incompetent. *McIlroy v. McIlroy*, 1 Rawle, 433; *Stall v. Catskill Bank*, 18 Wend. 475; *Cates v. Wacter's Heirs*, 2 Hill (S. C.), 442; *Freeman v. Spaulding*, 12 N. Y. 373; *Quin v. Moore*, 15 id. 435; Rapalje, Witnesses, § 89; *Hart v. Heilner*, 3 Rawle, 407; *In re Wilson's Will*, 103 N. Y. 374.

CASSODAY, C. J. It appears from the record that Jane Valentine died at her residence, in Buffalo, Marquette county, Wis., Monday, July 10, 1893, leaving, her surviving, no hus-

band, child, father, or mother, but did leave, her surviving, nine next of kin and heirs at law, including her brother, *Dougal McDougal*, who brings this appeal. She also left about $2,500 worth of personal property, but no real estate. Her precise age is not stated in the record, but she seems to have been quite aged. Her husband died some three years before she did. It appears from the evidence that June 29, 1892, she made a will in writing, and signed it, and that the same was thereupon attested and subscribed in her presence by two competent witnesses, as required by the statute (sec. 2282, R. S.). The contents of that will appear to have been sufficiently established by the evidence. That will did not purport to give anything to any of her next of kin or heirs at law, but did purport to give $100 to *Jacob H. Valentine*, a nephew of her husband, $50 to a boy or young man who had lived with her and her husband, $200 to a church named, and all the rest, residue, and remainder of her property to *Mary Morris*, wife of William Morris, living in the same town with her, and who had lived with her and her husband, prior to his death, as an adopted daughter; and, in case of *Mary's* death before the death of the testatrix, then such residue and remainder was to go to *Mary's* little son, *Henry N. Morris;* and *Andrew Reid*, one of the trustees of the church mentioned, was named as executor therein.

On the death of Mrs. Valentine no will was found, and thereupon *Jacob H. Valentine*, named in the will, petitioned the county court of Marquette county "to take proof of the execution and validity of such will, and to establish the same" as a will "lost or destroyed by accident or design," as provided in the statute (sec. 3791, R. S.). Upon the hearing of that petition the county court, January 11, 1894, established, allowed, and admitted to probate such written instrument, as the last will and testament of said deceased. From that judgment or decree the said *Dougal McDougal*,

as such next of kin and heir at law, by leave and authority given by the county court, appealed to the circuit court.

Upon the trial of said matter in the circuit court that court found, as the county court had, the due execution and contents of such will, and in addition the court found, in effect, that the will was in the possession of the deceased on the afternoon of the day previous to her death (being Sunday afternoon, July 9, 1893); that she died without destroying, canceling, or revoking the same; and that it was not, during her lifetime, canceled or destroyed by her authority, but was accidentally lost, or fraudulently destroyed or suppressed, previous to or subsequently to her death,— and thereupon affirmed the judgment of the county court establishing such will and admitting the same to probate. From that judgment the said *Dougal McDougal*, as such heir at law, brings this appeal.

1. The first ruling of the trial court to which exception was taken is to the effect that the residuary legatee, *Mary Morris*, named in the will, was not a party to the action or proceeding. We are clearly of the opinion that such ruling was error. Not only were she and the other legatees named in the will parties to the proceedings, but the several heirs at law were also parties to the proceedings; otherwise an heir at law could not bring this appeal, as a "party aggrieved." Sec. 3048, R. S.; *Day v. Buckingham*, 87 Wis. 219, and cases there cited. Undoubtedly, a proceeding to admit a will to probate is a proceeding *in rem;* but it is also, under our statute, a proceeding *in personam*, to the extent that when the will is duly proved and allowed in the county court as provided in the statutes, or on appeal in the circuit court, or in the supreme court, such probate and allowance is "conclusive" upon all legatees, devisees, and heirs at law, as to the due execution of the will and that it was not obtained by fraud or undue influence. Sec. 2294, R. S.; *Archer v. Meadows*, 33 Wis. 166; *Newman v. Waterman*, 63 Wis.

In re Valentine's Will.

616; *Scott v. West*, 63 Wis. 552; *Jones v. Roberts*, 84 Wis. 465. In so far as the proceeding was to establish the written instrument as a will which had been "lost or destroyed by accident or design," it was equitable in its nature; and so this court has held that even in the absence of sec. 3791, R. S., the circuit court would have had jurisdiction, under its general equity powers, to establish such lost or destroyed will. *Hall v. Allen*, 31 Wis. 691. It was there, in effect, held that in such an action the legatees and devisees were parties on the one side, and the heirs at law were necessary parties on the other side. See *Southworth v. Adams*, 9 Biss. 521; *S. C.* 11 Biss. 256. The logic of the decisions in this court pertaining to the matter is all to the effect that such legatees, devisees, and heirs at law are all parties to the proceedings; and in at least one case it is, in effect, so held. *In re Estate of Fitzgerald*, 57 Wis. 508; *Wright v. Jackson*, 59 Wis. 569; *Leach v. Leach*, 65 Wis. 284; *Will of Silverthorn*, 68 Wis. 378; *Goerke v. Goerke*, 80 Wis. 516, 520; *Begole v. Hazzard*, 81 Wis. 277. Obviously, such legatees, devisees, and heirs at law were and are parties to the proceedings.

2. Being parties, they were not disqualified by reason of their interest in the event of the action or proceeding, but were, by the statute, expressly made competent witnesses, except as otherwise provided in the statute (sec. 4068, R. S.). But as they each and all claim a share or interest in the property in controversy from and under the deceased, Mrs. Valentine, the statute expressly precluded each of them from being examined as a witness "in respect to any transaction or communication" by him or her "personally" with the deceased, except as expressly provided in the statute. Sec. 4069, S. & B. Ann. Stats., and cases cited in the notes. This sufficiently appears from cases already cited. Contrary to this rule of evidence, the residuary legatee, *Mrs. Mary Morris*, was not only allowed, against objection, to testify as to repeated conversations between her and Mrs.

Valentine in respect to the alleged will and the disposition she had made of her property, but also as to such conversations between her and Mr. and Mrs. Valentine several years prior to the making of the will, in regard to the disposition they respectively proposed to make of their property. Such rulings were errors.

3. The finding of the trial court to the effect that the will was in the possession of Mrs. Valentine the day before she died was based entirely upon the testimony of William Morris, husband of the residuary legatee. His testimony was admitted against objection, and apparently on the ground, as indicated, that his wife, as such residuary legatee, was not a party to the proceedings. The admission of his testimony under such circumstances and for such a purpose is contrary to the well-established general rule which precludes a husband or wife from being a competent witness for or against the other in an action or proceeding to which such witness is not a party. Such exclusion is not on the ground of interest, but of public policy. *Farrell v. Ledwell,* 21 Wis. 182; *Mountain v. Fisher,* 22 Wis. 93; *Butts v. Newton,* 29 Wis. 632; *Stewart v. Stewart,* 41 Wis. 624; *Blabon v. Gilchrist,* 67 Wis. 38; *Smith v. Merrill,* 75 Wis. 461; *Hoffman v. Joachim,* 86 Wis. 188. There is no pretense that he was or could be an agent for such a purpose, and manifestly the facts do not bring the case within any exception to the general rule at common law. His testimony covers nine printed pages, and relates to numerous conversations with Mrs. Valentine respecting the proposed disposition of her property, before the will was executed, and the existence of the will, and the effect of disposing of certain portions of her property after the making of the will. The error in admitting his testimony was vital, and must have had a controlling influence in the determination of the controversy by the court.

4. It appears that in May, 1893, and nearly a year after

In re Valentine's Will.

the making of the will, Mrs. Valentine sold and conveyed her land; that about that time there were rumors afloat to the effect that she had or was intending to destroy her will; that the latter part of June, 1893, she made a visit to her brother, the appellant herein; that she remained there about two weeks; that just before leaving there she caught cold; that she returned to her home on Thursday, July 6th; that she continued to go about and do her work until Saturday evening, July 8th, when she was compelled to go to bed; and that she died two days afterwards. In addition to the testimony of Mr. and *Mrs. Morris*, mentioned, there were other witnesses on behalf of the proponents who testified as to certain declarations of Mrs. Valentine to the effect that she had not destroyed her will but still had the same in her possession. On the other hand, the trial court excluded the testimony of several witnesses on the part of the contestants as to declarations made by Mrs. Valentine to the effect that she had destroyed her will and that she did not have it at the time of her death.

Counsel for the contestants claimed, in his oral argument, that the trial court was misled into making such inconsistent rulings by something written by the writer of this opinion. By a more thorough acquaintance with the little book referred to, counsel would have found the proposition expressly sanctioned, that "subsequent declarations of the testator are admissible to prove the existence or contents of a lost will;" and the proposition is supported by the citation of numerous cases. Cassoday, Wills, §§ 314–325. It may be, if counsel indulged in the same line of argument in the trial court as here, that the court was misled by the failure of counsel to distinguish between the admission of such declarations on the question of the revocation of a will, and the question of the existence or nonexistence of a lost will. Counsel seemed to think that it was essential to the admission of such declarations to demolish the well-settled

rule that upon the question whether a will had been revoked "by burning, tearing, canceling or obliterating the same, *with the intention of revoking it,* by the testator, or by some person in his presence, and by his direction," as prescribed by the statute (sec. 2290, R. S.), parol declarations of the testator are inadmissible, except when accompanying such act of revocation as a part of the *res gestæ.* Cassoday, Wills, §§ 284–309; *Will of Ladd,* 60 Wis. 187. Such destruction of such will may, in a given case, have been by mistake, accident, or inadvertence; and hence the admissibility of such declarations made at the time of such alleged revocation, to show the intent with which it was done. But suppose a controversy arises as to whether the testator was, at the time of such alleged revocation, sane or insane; then, we apprehend, there could be no doubt but what, upon the question of sanity or insanity, prior or subsequent declarations would be admissible, — not as proving or disproving the act of revocation, but as proving or disproving the mental capacity to make such revocation. In the supposed case, therefore, such declarations, being admissible for the one purpose, would necessarily have to be admitted, and then the effect to be given to them would be determined by the court in its decision or charge to the jury. So it is well settled that, in cases of undue influence, subsequent as well as prior declarations are admissible, not as proving the truth of the statements therein contained, nor as evidence of the fact stated or denied in such declarations, but only as tending to prove mental capacity or want of capacity on the part of the testator at the time the alleged undue influence was claimed to have been exerted. Cassoday, Wills, §§ 311–313. Where, as here, it is established that the testatrix properly executed a valid will, and the same was last known to be in her possession but cannot be found on her death, there is a *prima facie* presumption that she destroyed it with the intention of revoking it, but such presumption may be over-

come by competent evidence.   Id. §§ 314–320, 356–367, and cases there cited.   Of course, if such subsequent declarations are admissible in evidence to overcome such presumption, they are also admissible to support such presumption.   True, upon the principles already stated in respect to admitting such declarations on the question of undue influence, her subsequent declarations to the effect that she had destroyed her will by burning the same, or by any of the other prescribed methods, would not be evidence of the fact so declared, — much less, that such destruction was with the intent to revoke, — but they would tend to prove that she died in the belief that she had left no will, and thus support the presumption of revocation arising from the fact that it was last known to be in her possession but could not be found upon her death.

That such subsequent declarations were admissible on the question of the existence or nonexistence of such lost will is abundantly supported by numerous adjudications to which reference has already been made, and particularly the following, cited among others in Cassoday, Wills, §§ 316–320, 386, 387: *Sugden v. Lord St. Leonards* (1876), 1 Prob. Div. 154, 17 Moak, Eng. R. 453–552; *Keen v. Keen*, L. R. 3 Prob. & Div. 105; *Woodward v. Goulstone*, 11 App. Cas. 469; *Harris v. Knight*, 15 Prob. Div. 170; *In re Goods of Ball*, 25 L. R. Ir. 556; *Boudinot v. Bradford*, 2 Dall. 266; *Youndt v. Youndt*, 3 Grant's Cas. 140; *Durant v. Ashmore*, 2 Rich. Law, 184; *Steele v. Price*, 5 B. Mon. 58; *Weeks v. McBeth*, 14 Ala. 474; *Lawyer v. Smith*, 8 Mich. 412; *Harring v. Allen*, 25 Mich. 505; *Patterson v. Hickey*, 32 Ga. 156; *Foster's Appeal*, 87 Pa. St. 67; *Pickens v. Davis*, 134 Mass. 252; *Southworth v. Adams*, 11 Biss. 256.   The learned counsel for the contestants cites the following additional cases, which support the conclusions reached: *Collagan v. Burns*, 57 Me. 449; *Behrens v. Behrens*, 47 Ohio St. 323; *Collyer v. Collyer*, 110 N. Y. 481; *Comm. v. Trefethen*, 157 Mass. 189,

and cases there cited.   See, also, *Williams v. Williams*, 142.
Mass. 515; *Lane v. Moore*, 151 Mass. 87.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause is remanded for a new trial.

