WILL OF OSWALD: STEADWELL, Appellant, vs. KEYES, Respondent.

*June 3—September 25, 1920.*

*Wills: Revocation by destruction: Will in possession of testatrix not found after death: Presumption: Declarations of testatrix: Witnesses: Competency: Transactions with deceased person: Husband as witness for wife: Appeal: Weight accorded findings of trial court.*

1. On appeal in a will case involving the question whether or not a will had been revoked by its destruction by decedent, due deference must be given to the opinion of the trial court as to the weight and credibility of evidence given by witnesses in his presence.

2. Under sec. 4069, Stats., relating to transactions with deceased persons, an interested witness could not testify that the deceased burned the will in her presence in a basin procured by such witness for the deceased.

3. Where it is established that testatrix properly executed a valid will and that the same was last known to be in her possession but cannot be found on her death, a *prima facie* presumption arises that she destroyed it with the intention of revoking it. *Valentine's Will,* 93 Wis. 45, followed.

4. The husband of an interested party in a will contest is competent, under sec. 4072, Stats., to testify in favor of his wife concerning the destruction of the will by decedent.

5. Declarations of the testatrix that she had destroyed her will and had sold and given away everything she had, and directions to a witness as to whom she wanted him to give certain things, were competent as tending to prove that deceased died in the belief that she left no will, and thus support a presumption of revocation arising from the fact that the will was last seen in her possession and could not be found after her death.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Marion Oswald died February 2, 1918, in the city of La Crosse, where she had for many years maintained a woman's apparel shop. She had suffered from cancer for several years preceding her death, and in 1917 had an operation because of that condition. Towards the end of

1918 she grew worse and went to live with her sister, *Mrs. Steadwell.* After her death *Mrs. Steadwell* filed a petition in the county court of La Crosse county asking for administration of decedent's estate as an intestate estate. *Mrs. Keyes,* another sister of deceased, filed a petition alleging in substance that Marion Oswald had died testate but that the will had been lost or hidden, and asked the county court to establish the will. The county court denied the petition of *Mrs. Keyes* and granted the petition of *Mrs. Steadwell* for the administration of the estate as an intestate estate. *Mrs. Keyes* then appealed to the circuit court, where a trial was had upon the issues raised by the parties in the county court. The circuit court upon the evidence adduced found that on January 17, 1918, Marion Oswald had legally executed a will in which she had bequeathed all her property to her sister, *Mattie Keyes,* who was also named executrix, and that the testatrix never altered, destroyed, or revoked the will, and died in the belief that she had left a valid and existing will. The court also found that Miss Oswald never authorized any one to withdraw her will from the office of her attorneys, where she had left it; that nevertheless the will was withdrawn without her knowledge, and was lost or destroyed by accident or design.

Judgment was entered reversing the decision of the county court and directing probate of the will as a lost will. This is an appeal from such judgment.

For the appellant there was a brief by *Hartwell & Cowie* and *Cowie & Hale,* all of La Crosse, and *Otjen & Otjen* and *A. H. Bartelt,* all of Milwaukee; and the cause was argued orally by *Robert S. Cowie* and *Henry H. Otjen.*

*Jesse E. Higbee* of La Crosse, for the respondent.

The following opinion was filed July 3, 1920:

SIEBECKER, J. The important question for determination is, Did the court err in finding that decedent's will was not revoked by her during her lifetime? The court concluded that the testimony of *Mrs. Steadwell,* decedent's sis-

ter, who testified that the decedent had revoked her will by
burning it in the presence of the witness, must be disre-
garded for two reasons: (1) because it related to a personal
transaction with deceased and hence was incompetent;
(2) because he regarded her testimony as so completely
impeached that it could not be given any weight and proba-
tive effect.    The trial court's opportunity to ascertain the
weight and credibility of evidence given by witnesses in his
presence is superior to that of this court, and due deference
to the opinion of the trial judge on this point is not to be
disregarded in a review of his findings of fact in the case.

An examination of the record raises a doubt in our minds
regarding the trial court's conclusion that the witness *Mrs.
Steadwell* is so overwhelmingly impeached as to require
rejection of her testimony on that ground.   We think, how-
ever, that the transaction testified to by this witness regard-
ing the burning of the will by the deceased sister in the
presence of the witness amounts to a personal transaction
with deceased and must be excluded as incompetent evidence
under sec. 4069, Stats.   The witness testifies that she was
present and alone with her sister in the room during the
alleged burning of the will by the deceased and that she saw
her tear and set fire to the document, and that it was finally
consumed in a granite basin near decedent's bed.   The wit-
ness states that she had procured this granite basin for the
deceased.   The witness's acts thus disclosed by her are so
closely related to what she testifies the decedent then did in
her presence that it brings her testimony within the prohibi-
tions of sec. 4069, Stats., as a transaction with the de-
ceased, and is therefore incompetent evidence.

The question recurs, Does the competent evidence in the
case sustain the court's finding that decedent's will was not
revoked?   The evidence must be considered in view of the
rule stated in *Valentine's Will,* 93 Wis. 45, 67 N. W. 12:

"Where, as here, it is established that the testatrix prop-
erly executed a will, and that the same was last known to
be in her possession but cannot be found on her death, there

is a *prima facie* presumption that she destroyed it with the intention of revoking it, but such presumption may be overcome by competent evidence."

An important inquiry is, When was the will last in decedent's possession? It is claimed by proponent, and the court so found, that the will did not come into her possession after depositing it with her attorneys for safe-keeping at the time of its execution in June, 1917. It appears without dispute that this will did leave the possession of the attorneys on the 28th or 29th of January, 1918. The evidence is also clear that the attorneys' clerk mailed it from their office and addressed it to decedent at the residence of the Steadwells. An examination of all the evidence leaves no room for doubt on this point. The fact that it was received at the Steadwell home, where decedent was then being cared for in her last sickness, is testified to by Mr. Steadwell, husband of decedent's sister. He testifies that on January 29th or 30th he was called from his office to his home to give decedent a treatment to relieve her difficult breathing; that he prepared for this treatment, and that as he passed from the kitchen through the sitting room on his way upstairs to decedent's bedside he saw three or four letters addressed to her on the library table, and among them a letter from Morris & Hartwell, attorneys, who had custody of her will. It was a large envelope, such as the attorneys' clerk described as the one into which she put the will, addressed it to the decedent at the Steadwell home, and then mailed it. The competency of Mr. Steadwell as a witness under sec. 4072, Stats., cannot be doubted. He states: "I gave that envelope to Miss Oswald with the other mail." He also testifies in detail that on the Friday following this transaction decedent requested him to stay with her, that he did so, and that decedent then told him about having made the will in question, and that she had destroyed it "because she couldn't let it stand as it was," and that she

informed him that she had sold and given away everything she had, and instructed and directed him to whom to give the things she specified. These declarations are competent evidence, as the trial court held, as tending "to prove that she died in the belief that she left no will, and thus supports the presumption of revocation arising from the fact that it was last known to be in her possession, but could not be found in her possession." *Valentine's Will,* 93 Wis. 45, 67 N. W. 12. We are persuaded that the court clearly erred in concluding that the will did not come to decedent's possession after its execution. All the positive evidence tends to show that she received it. This testimony is not disputed by any direct testimony, nor is it impeached by facts and circumstances bearing on this issue. The inference from the evidence clearly tends to prove that the will in question came into decedent's possession in an envelope from the office of Morris & Hartwell through the mail and that it was delivered to her. That it could not be found upon her death is undisputed. In addition to these facts, the evidentiary facts and circumstances tend to support the presumption that decedent revoked the will by destroying it. We have read and examined the evidence and cannot find any justifiable grounds for saying that it discloses facts which show that the will in question was lost or destroyed by accident or design. It is considered that the presumption that decedent revoked this will after it came into her possession has not been rebutted. This fact of revocation of the will being thus established, all other questions suggested are immaterial.

From the foregoing it follows that the judgment of the circuit court decreeing that the will of Marion Oswald was not revoked or canceled by her must be reversed, and that the circuit court must affirm the decree of the county court declaring that Marion Oswald died intestate.

*By the Court.*—The judgment appealed from is reversed,

and the cause remanded to the circuit court with direction to affirm the judgment of the county court of La Crosse county and remand the record to such county court for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on September 25, 1920.