MARKGRAF, Respondent, vs. COLUMBIA BANK OF LODI, Appellant.

*November 10, 1930—February 10, 1931.*

430

432

433

434

435

436

For the appellant there was a brief by *H. B. Rogers* of Portage and *Hill, Beckwith & Harrington* of Madison, and oral argument by *Mr. Rogers* and *Mr. D. V. W. Beckwith*.

For the respondent there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady*.

The following opinion was filed December 9, 1930:

NELSON, J. The defendant contends that the court erred (1) in striking out the third separate defense of the answer, (2) in striking out the fourth separate defense of the answer, (3) in denying defendant's motion for a directed verdict, (4) in receiving evidence over defendant's objection and in refusing to strike it out, (5) in refusing to give requested instructions, and (6) in instructing the jury.

Prior to the commencement of the trial the court, on motion duly made, struck out of defendant's answer its third and fourth separate defenses to the plaintiff's complaint.

The defendant, for a third and separate defense to the plaintiff's complaint, alleged in substance that the plaintiff, together with Ferd Markgraf, Henry Markgraf, Sr., Albert Markgraf, and Belle Markgraf, entered into a conspiracy to acquire control of defendant bank and use its funds for the purpose of speculation for their mutual benefit; that pursuant to such conspiracy they purchased sufficient stock to insure the election of Ferd Markgraf as cashier and controlling manager of the bank; that through the efforts of said conspirators Ferd Markgraf was placed in charge of said bank and immediately thereafter began to abstract large sums of money from the bank for his benefit and the benefit of his co-conspirators; that by means of false and fraudulent entries, by means of cashing checks of said conspirators without sufficient funds in said bank and substituting purported notes therefor, and by means of false and

fraudulent entries in deposit books without deposits having been made, and by means of the issuance of false and fraudulent certificates of deposit to said conspirators without the payment of cash or anything of value therefor, the bank was defrauded out of sums aggregating more than $40,000; that the acts of Ferd Markgraf were committed for the benefit of all of said conspirators and that each of said conspirators profited thereby; "that the records charging the defendant bank with the bonds purporting to belong to the plaintiff were made pursuant to such fraudulent and unlawful conspiracy and did not represent *bona fide* transactions with said bank." The striking out of this defense is claimed to be prejudicial error.

This third defense was denominated a defense and not in any sense a counterclaim. No suggestion by counsel that it was intended as such or should be considered as a counterclaim was made. So the question arises, Do the allegations of the third separate defense, when fairly construed in favor of the defendant, constitute a defense to plaintiff's cause of action? We have carefully considered the several authorities cited by defendant with the result that we conclude that such authorities go no farther than to hold that where records or documents exist or accounts stated are found which have been made up or result from fraud or conspiracy for the purpose of defrauding a third party, such third party is not bound thereby, but he may show in defense of any action based on such fraudulent records or accounts that they are in fact fraudulent and resulted from a conspiracy to defraud such third party. No case is cited which holds that such a defense operates more broadly as a defense than as just hereinbefore stated. We conclude, therefore, that the conspiracy defense, as set forth in defendant's answer, did not state a defense to plaintiff's cause of action unless plaintiff's cause of action is founded on documents or records which were fraudulent and resulted from a conspiracy. In this action

there appeared to be no documents or records resulting from a conspiracy whose genuineness could not be questioned or attacked by defendant under its general denial. We therefore conclude that the defendant was not prejudiced by having its third separate defense stricken from the answer.

Answering the plaintiff's complaint the defendant further interposed what is denominated as its fourth separate defense. The defendant alleged in substance that on or about November, 1924, plaintiff, being then a stockholder of the defendant bank and being fully advised as to his alleged claim against the bank, offered his stock to one Ben Posta, a stockholder of said bank, and induced said Posta to purchase the same, representing that he had no claim of any kind against the bank; that Posta, relying upon such representations, purchased the stock from the plaintiff and paid him full value therefor, and that by virtue of such acts the plaintiff is now estopped to assert any claim against the bank which would impair the value of its stock.

Defendant contends that an estoppel results when one fails to speak when he knows that another will be injured by his silence; that the plaintiff is estopped as against the bank to make claim against the bank because he represented to Posta that he had no claim against the bank; that defendant can assert such estoppel in behalf of its stockholders when necessary for their protection. It will be noted that there is no allegation in this defense to the effect that the defendant in any manner participated in the alleged sale of plaintiff's stock to Posta or in any manner relied, to its injury or the injury of its stockholders, upon any representations made by plaintiff to Posta or in any manner acted upon the faith of any representation or declaration. On well established principles of estoppel it is not perceived how the bank can assert such estoppel to defeat plaintiff's claim. *Conkey v. Hawthorne,* 69 Wis. 199, 33 N. W. 435; *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, 103 N. W. 244; *Zwie-*

*tusch v. Luehring,* 156 Wis. 96, 144 N. W. 257; *Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2; *Kitch v. Northwestern Nat. Ins. Co.* 189 Wis. 378, 207 N. W. 716. If defendant's fourth cause of action had contained allegations to the effect that the bank participated in some manner in the sale of said stock to Posta and relied upon representations made by the plaintiff so that it in turn changed its position or was in some manner injured, or, on account of such representations, incurred some liability, a different situation might appear, but no such situation is set forth in this defense. Of course, plaintiff's statement that he had no claim against the bank was admissible as an admission against interest.

We have carefully read all of the authorities cited by defendant and have come to the conclusion that they do not support defendant's contentions. We see no error in striking the fourth separate defense from the answer.

We now come to the defendant's contention that the court erred in admitting evidence over defendant's objections. The plaintiff was examined adversely before trial. Upon such examination he testified to facts which were false. Shortly thereafter he discovered such falsity in his testimony and thereafter attempted, by means of an affidavit served upon defendant's counsel, to correct and explain his testimony given at the examination. The rather prompt correction of his testimony by affidavit was commendable. However, upon the trial of the action portions of this affidavit were permitted to be read into the record over defendant's objections that such excerpts were purely self-serving declarations and that the person making the affidavit was in court available to testify. The portions of the affidavit permitted to be used were patently self-serving, the apparent purpose of such reading being to attempt to establish good faith on the part of the plaintiff and that the plaintiff was dealing entirely in good faith and that the defendant was attempting to with-

hold information. That these self-serving declarations were inadmissible and were prejudicial cannot be doubted. It is elementary that self-serving declarations on the part of a party to an action are inadmissible in evidence. *Hilton v. Rahr,* 161 Wis. 619, 155 N. W. 116; *Cohn v. Heimbauch,* 86 Wis. 176, 56 N. W. 638.

The court received in evidence, over the defendant's objection, certain loose yellow sheets of ordinary scrap paper on which appear notations as to certain bonds, above which are listed a day of the month but no year. These were offered in connection with the testimony of one Edwin T. Besch, trustee of the defunct Jarchow Company, who testified that these sheets were found in a secret file of Jerome A. Bond, formerly in charge of the Jarchow Company; that this secret file contained other papers referring to the accounts of Ferd Markgraf with said company. Some of the notations on the yellow sheets related to bonds of the same companies which had issued the bonds claimed by plaintiff, but the notations contained no dates, no memorandum of ownership, no numbers of the bonds listed, and no memorandum as to what transaction they were connected with. These sheets were admitted on the theory that they were book entries other than the regular account books of a business under the provisions of sec. 327.25 of the Statutes. While it is true that such entries need not be bound as a book, they must be made in the usual course of business, contemporaneously with the transactions to which they relate and connected with such transactions, and by persons authorized to make them. These sheets clearly do not meet the requirements of the statute. In *Kelley v. Crawford,* 112 Wis. 368, 88 N. W. 296, where similar loose sheets were offered in evidence under this statute, it was said:

"This statute gives admissibility to documents which, by the common-law rules of evidence, would be excluded, and it is to take effect only upon reasonably strict compliance with all of the requisites which it prescribes."

In the light of the requirements of the statute it seems clear that said loose sheets were improperly and erroneously received in evidence and were prejudicial to the defendant in that they tended to establish in the minds of the jury the fact that Ferd Markgraf had in his possession and had disposed of some of the bonds in issue by turning them over to the Jarchow Company.

The court received, over the repeated strenuous objections of the defendant, testimony of the plaintiff in regard to the purchase of the bonds in issue from Ferd Markgraf, deceased cashier and agent of the defendant, and relative to the leaving of said bonds in the latter's possession as an officer of the bank, illustrations of which testimony are set forth at considerable length in the statement of facts. That this testimony in large part constituted the examination of a witness as to transactions with a deceased agent we entertain no doubt; that it was given in violation of the provisions of sec. 325.17, as such section has been construed by the court, seems too plain for controversy. In *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681, where the plaintiff was attempting to recover, among other things of value, notes left with the testator for collection, and where the evidence showed that the plaintiff and the testator were together at a certain place and that the plaintiff had the notes; that the plaintiff and testator left the place where they were together; that the plaintiff did not then have the notes nor did a third party present have them, the inference, of course, being that the testator had them, this court said (p. 430) :

"Either this testimony was wholly irrelevant and immaterial, or it tended very directly to establish a transaction between plaintiff and her husband. She had testified to the production of the note to both of them, and that without separation they both left the house together, and that never after that time did she have that note. It could have been offered for no purpose save as tending to establish that the

note was delivered to her husband at that time, and that he never delivered it back to her, to neither of which. facts was she a competent witness. We consider that this testimony transgressed the limitation, and that error was committed in its admission."

In this same case the same method of testimony was used concerning a claim for $250 cash, which was alleged to have been given to the testator. With reference to this the court said (pp. 430, 431) :

"This testimony also seems to be so directly connected with a transaction between plaintiff and deceased as to be improper. Its only purpose was to show that in a transaction to which some one else had testified, such testimony being ambiguous as to what money was referred to, she had only the specific $250. It is certainly an attempt to prove by this witness that the $250 was the subject of the conversation between her and her husband overheard by the child; and the answer to the second question, if relevant at all, tended to justify an inference of its delivery to him at that time and a denial that he ever returned it to her. The objections to her competency to answer these questions should have been sustained."

In *Jackman v. Inman,* 134 Wis. 297, 114 N. W. 489, the defendant, in an action by the trustee of an estate, attempted to show that a note payable to the deceased had been paid, by testifying that he went to where the deceased was with $400 and came away with only $200, the inference being that the other $200 was left with the deceased in payment of the note. As to such a situation this court said (p. 299) :

"The evidence of the defendant that he went into Van Kirk's store with $400 in money and came out with the second note and but $200 in money was doubtless inadmissible. If this evidence did not tend to prove that defendant paid Van Kirk the amount due on the note, and that Van Kirk surrendered the note upon such payment, it was immaterial; if it did tend to prove these facts, then it was evidence of a transaction had by the defendant personally with

a deceased person through whom the plaintiff derived his title to the cause of action, and such evidence is excluded by sec. 4069 (Stats. 1898). This was practically conceded by the defendant's counsel, and, in any event, is settled by the case of *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681."

See, also, *Will of Oswald,* 172 Wis. 345, 178 N. W. 462; *Felz v. Estate of Felz,* 170 Wis. 550, 174 N. W. 908; *Bibelhausen v. Bibelhausen,* 159 Wis. 365, 150 N. W. 516.

The rule established by the provisions of sec. 325.17 should not be looked upon with disfavor nor should its plain provisions be disregarded.

That the admission of the plaintiff's testimony as to the transactions with the deceased agent was clearly prejudicial cannot be doubted. The plaintiff in this action, in order to recover, was necessarily required to prove two things : first, that he was the owner of the bonds in question, and second, that he left the bonds with the defendant for safekeeping. All of the transactions testified to were with Ferd Markgraf, his deceased brother. The mere fact that plaintiff concededly purchased two of the bonds from the bank is not at all proof that he thereafter left those bonds with the bank for safekeeping. Nor does the mere fact that certain remittance sheets of the bank listed coupons as belonging to the plaintiff amount to proof that the bonds were left with the bank for safekeeping. Whether the coupons were clipped and deposited for collection by the plaintiff himself, whether the bonds were left by plaintiff with his brother in his individual capacity, or whether they were actually in the bank's custody for safekeeping, could not be determined from proof of an occasional remittance of a coupon for collection. The mere fact that the bank had accepted bonds from other customers for safekeeping was not proof of the claim that the bank had received bonds from the plaintiff for safekeeping. The fact that plaintiff had no safekeeping receipt, that he had

never had one covering the bonds in issue, constitutes a rather strong circumstance in defendant's favor. Up to the time that the plaintiff was permitted to testify to the transactions with the deceased brother there was little testimony to support a conclusion that the bank had the possession of these bonds under an agreement for safekeeping. If the evidence of the plaintiff did not therefore tend to prove that he purchased the bonds from the bank and thereafter left them in the bank for safekeeping, it was immaterial. If it did tend to prove these facts, then it was, under the decisions of this court, evidence of a transaction with a deceased agent of the defendant and was inadmissible under the statute.

The defendant requested the court to give a certain instruction as to the burden of proof. The court did not give the instruction requested but instructed the jury as follows:

"The burden is on the party contending for the affirmative to satisfy you of the affirmative to a reasonable certainty by a preponderance of the evidence. That is, you will answer 'Yes' if you are satisfied to a reasonable certainty by a preponderance of the evidence that the fact is as expressed by such answer, and if you are not so satisfied you will answer 'No.' "

While, in our opinion, the court might properly have given a more full and complete instruction as to the burden of proof, we are inclined to hold that such failure did not constitute prejudicial error.

The court instructed the jury as to the testimony received as to the purchase of bonds by other customers and as to the leaving of securities at the bank for safekeeping by other customers, as follows:

"Testimony has been introduced as to what extent the bank sold bonds to other customers; also testimony was received as to other customers leaving their securities at the

bank for safekeeping. Testimony of this nature is beside the real issue in the case, but it is received for the purpose of showing the manner of doing business, custom, and the like. It may also, by inference alone, bear in some degree on whether, and to what extent, Ferd Markgraf may or may not have received securities for safekeeping for the plaintiff."

The last sentence of the quoted instruction was, in our opinion, erroneous. Such testimony could not have been properly received for any purposes other than as tending to show that the bank did sell bonds to its customers, did hold bonds of its customers for safekeeping, and that transactions of that character were within the scope of the cashier's authority. Whether or not it received plaintiff's bonds for safekeeping clearly depended upon what agreement the plaintiff had with the bank acting through any of its officers, and whether, pursuant to any agreement, the plaintiff delivered the bonds to the defendant for safekeeping. This fact could not be proved by showing that the bank had entered into safekeeping agreements with other persons not involved in the case or had sold bonds to other persons not involved in the case. No proper inference could be drawn from the proof of such facts alone that the plaintiff had bought bonds from the bank and had left them with the bank for safekeeping. No such inference could be drawn from the facts recited in the court's instruction and the jury should not have been told that such an inference was permissible. We consider this instruction was erroneous and prejudicial. The facts in this case present a situation clearly distinguishable from the one presented in *Stevenson v. Columbia Bank of Lodi,* 197 Wis. 268, 221 N. W. 753. In that case the plaintiff held safekeeping receipts issued by the bank and the bank itself kept, in its file, copies of such receipts. (Page 278.) These receipts and copies strongly supported the finding of the jury that the bonds involved in that case were accepted by the bank for safekeeping.

Because of the prejudicial errors which occurred upon the trial of this action, a reversal must result.

*By the Court.*—The judgment of the circuit court is reversed.

A motion for a rehearing was denied, with $25 costs, on February 10, 1931.