MACKIN, Administrator, Respondent, vs. HOBBS, Appellant.

*October 26—November 14, 1905.*

*Executors and administrators: Compensation: Expenses incurred in*
*bad faith or through laches: Judgments for costs: Disallowance*
*Discretion.*

1. In determining the compensation of an administrator, under sec.
   3929, Stats. 1898, all his charges for expenses which were the
   result of his bad faith or inexcusable negligence should be disal-
   lowed, so far as the matter of allowance is within the discre-
   tion of the court.
2. Where an administrator had in bad faith presented for allowance
   in his favor an account which was largely dishonest, and by his
   efforts to enforce collection thereof from the real property had
   involved the estate in expensive litigation which was unneces-
   sary and, through his inexcusable negligence, was entirely fruit-
   less, the court, in passing upon his final account, should have
   disallowed all his charges for expenses not shown to have been
   necessarily incurred in the care, management, and settlement
   of the estate, all claims for extraordinary services except such
   as were honestly rendered to promote reasonably some object
   beneficial to the estate, and all claims on account of judgments
   against the administrator for costs unless such costs were
   therein ordered to be paid out of the estate.

APPEAL from a judgment of the circuit court for Fond du
Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Plaintiff, administrator of the estate of Patrick Madden,
deceased, presented to the county court of Fond du Lac
county, which had jurisdiction of the matter, his final ac-
count, claiming a balance from the estate of $1,192.60. Such
proceedings were duly had in respect thereto that items ag-
gregating $123.40 were allowed, against which there were
charged estate credits of $54, leaving a balance for the ad-
ministrator of $69.40. From that an appeal was taken by
him to the circuit court. A trial was duly had there result-
ing in items of the account aggregating $666.37 being al-
lowed, against which the estate was credited with $79.73,

leaving a balance due the administrator of $586.64. The residue of the account, being items aggregating $545.90, was disallowed. Judgment was rendered accordingly, without costs to either party, from which this appeal was taken by *George Hobbs* as a party aggrieved by reason of his being owner of real estate against which the sum awarded the administrator was made a lien.

The facts of the case, as indicated by the findings, are these:

Patrick Madden died testate May 9, 1892. He left no personalty for the payment of his debts and the expenses of the administration of his estate. He left real estate consisting of a homestead valued at $1,675, which he willed to his wife for life, remainder over, one half to his son Phillip Madden, subject to a legacy of $100 for his daughter Elizabeth and a legacy of $5 for his son Andrew, and one half to Mary Ann Brown, subject to his debts and expenses of administration. No executor was named. The will was admitted to probate April 10, 1893, respondent being appointed administrator with the will annexed July 17th thereafter. One beneficiary opposed the probate, resulting in a contest in county court lasting two days, attorneys Duffy & McCrory appearing for the proponent Andrew Madden. The widow appealed from the decision rendered. Attorneys Duffy & McCrory represented the proponent in that matter, which was dismissed in the circuit court without a hearing and before the administrator was appointed. In September, 1893, thereafter the widow commenced an action in circuit court to set aside the deed of the real estate, claiming that it should have been made to her instead of her husband. That action was dismissed without a trial. While the appeal in the will contest was pending an action was commenced to foreclose a mortgage on the real estate of $200 given by the testator to one Barnes. Attorneys Duffy & McCrory represented the defendants, consisting of the beneficiaries under the will. Mr. McCrory made

a loan to the parties interested of $350 to pay the mortgage debt and costs of foreclosure and $25 to Duffy & McCrory for services rendered defendants, and $15 on account of services in the will contest. He took security on the real estate in the name of Mr. Brennan, a clerk in Duffy & McCrory's office.

On July 3, 1896, the administrator filed in the county court an account of his transactions in respect to the estate up to that time, claiming credits to the amount of $217.15 and a balance due him of $163.05. In October, 1897, the beneficiaries named in the will mortgaged the property to appellant *George Hobbs* for $1,000, and on January 19th thereafter they sold the same subject to such mortgage to William McCullough, the consideration named in the conveyance being $1,960. January 25th thereafter a hearing on claims was concluded, resulting in claims being allowed against the estate to the extent of $42.50. The balance due the administrator, according to his account filed as aforesaid, of $163.05 was illegitimate as more particularly stated hereafter, except as to items aggregating $42.15. On the 23d day of May, 1898, the total amount of indebtedness was the aforesaid $42.15 due the administrator and $42.50 on allowed claims. At that time upon a contest, of which the appellant and the then holder of the legal title to the real estate and the mortgagee had no personal notice and in which they did not participate, an order was granted by the county court, in due form, authorizing the sale of the one-half interest in such real estate willed to Mary Ann Brown, for the payment of such allowed claims. The administrator's petition for a sale for the purposes of paying the expenses of administration as well was denied. He appealed to the circuit court. Before the appeal was heard in such court such allowed claims were paid by Phillip Madden. The legacies to Elizabeth Coleman and Andrew Madden were paid before the application for leave to sell the real estate was made. The administrator was defeated upon the hearing of the appeal in the circuit

court, a judgment being rendered against him November 16, 1898, from which he appealed to this court, which September 25, 1899, rendered a decision, reported in 104 Wis. 61, 80 N. W. 100, holding that by the terms of the will the debts of the testator and the expenses of administration were a lien upon the interest in the real estate willed to Mary Ann Brown. June 16, 1900, pursuant to the mandate of this court a license was granted for the sale of such interest.

About this time appellant began an action to foreclose his mortgage, making the administrator a party and obtaining a temporary injunction against the execution of the license. The injunction was dissolved and the action dismissed as to the administrator in November, 1900. May 23, 1901, an application for an extension of the license to June 16, 1902, was made. In the meantime appellant obtained a judgment in his foreclosure action. The execution thereof was stayed June 21, 1901, for sixty days. The application for extension was denied because not made within one year after the entry of the order in circuit court pursuant to the mandate of this court. The administrator appealed and was defeated in circuit court because the true date of the order sought to be modified was that of the original order, May 18, 1898, and more than two years having elapsed thereafter the court was powerless to grant the application. He then appealed to this court and the judgment was affirmed on the ground that he had been guilty of laches,—prolonging the administration beyond the six years limited therefor by the policy of the statute, and, therefore, that the court should have refused upon that ground to do more than to settle his account and assign the estate, subject to a charge upon the Mary Ann Brown interest therein for the amount due the administrator. In all of the various proceedings in which the administrator was a party Duffy & McCrory were his attorneys.

The decision of this court last mentioned was rendered February 3, 1903. May 26, 1903, the administrator filed his

account with a petition for its allowance and for the assignment of the estate as suggested in the opinion of this court. The account consisted of the balance claimed in the account filed in 1896, various items for attorney's services in the litigation to secure the sale of the real estate, aggregating $650; $60 paid to the widow and $111.31 for printer's fees, clerk's fees, traveling expenses of attorneys, etc., the same being, in the main, costs of efforts to obtain a sale of the real estate; $75 attorney's services in the *Hobbs* foreclosure case; $15 for personal services of the administrator; and $222.92 for four judgments for costs, all aggregating $1,297.26. The first judgment was in respondent's favor on the first appeal to this court. The second for $56.69, costs in the circuit court, judgment being rendered pursuant to the mandate of this court. The third for $57 was costs against respondent in this court on the second appeal. The fourth, $44.80, was a judgment for costs against the administrator in the circuit court in favor of McCullough. The allowance of the account was opposed by the appellant *Hobbs,* as owner of the real estate. Eleven hundred and forty-two dollars thereof consisted of expenses incurred in efforts to charge the Mary Ann Brown interest in the realty with the amount due the administrator, as per his statement of 1896. That account was knowingly fictitious to the extent indicated by the following:

The item of $25 for a retainer in the Barnes foreclosure is for services rendered the devisees and paid for by them. The administrator had nothing to do with the matter. McCrory, one of the alleged retained attorneys, loaned to the devisees the necessary money to pay off the mortgage, as before stated, taking a new mortgage in the name of. his clerk, which included the $25 mentioned.

The item of $50 on will contest in the county court is for services rendered the proponent of the will before any administrator was appointed.

The item of $20 for will contest in circuit court is for serv-
ices of the same nature as the last foregoing.

The $75 for attorney's services in widow's action to annul
the deed of the homestead covers work, in the main, per-
formed for the devisees.    The administrator, the devisees,.
and Brennan, the mortgagee who stood for McCrory, were
made defendants.    McCrory as a real party in interest ap-
plied to be made a defendant.    Duffy & McCrory represented
all the defendants.    No answer was interposed for the ad-.
ministrator, nor was any claim even for costs made against
him.    The $75 was for services for all defendants, and no
evidence was presented showing what particular work was.
done for the administrator.

Had the administrator exercised proper diligence to con-
serve the interest of the estate his claim for compensation, so
far as the same was legitimate, would have been settled with-
out incurring any of the expenses charged for attorney's serv-
ices and disbursements in the litigation resorted to for the
purpose of charging such claim against the real estate.    Hobbs
filed a bond under sec. 3886, Stats. 1898, which remained on
file from February 23, 1900, to March 10, 1901.    Good faith
on the part of the administrator required him to rely upon
such bond, as he might have done successfully, instead of in-
curring so much expense to charge the real estate with his
claim.    Reasonable compensation for attorney's services to so
charge the real estate would not exceed $450 under any cir-
cumstances, while the amount charged is $650.    Because of
the misconduct of the administrator and his attorneys, as
stated, only $225 should be allowed.    The amount allowed
the administrator for personal services should be limited to
$15 as charged.    The items of disbursements in respect to the
sale of real estate, aggregating $111.30, for printer's, ap-
praiser's fees, clerk's fees, etc., should be allowed.    Also $75
for attorney's services in the foreclosure action of Hobbs v.

*Madden et al.* The various judgment claims for costs, aggregating $222.92, should be allowed at $197.92. The items in the account filed in 1896, as aforesaid, should be disallowed, except $27.15, the item of $25 attorney's fees included in the $42.15, heretofore said to be a legitimate part of such account, being disallowed. The aggregate of the allowed items, $666.37, should be reduced by credits to the amount of $79.73, the same being for costs paid to the administrator. *Hobbs* knew, or ought to have known, when he took the mortgage that the Mary Ann Brown interest in the real estate was liable for claims that might be allowed against the estate and for the expenses of administration. During all the litigation he resisted the efforts of the administrator to obtain payment of such claims out of the realty. . By paying the small amount chargeable against the realty at the beginning, being $84.65, all of the expenses forming the foundation for the large claim against the estate would have been avoided.

The cause was submitted for the appellant on the briefs of *E. Blewett,* and for the respondent on the brief of *Duffy & McCrory.*

MARSHALL, J. Error is assigned because the court allowed any part of respondent's account which it had discretionary authority to disallow. As we view the record such assignment is all that need be considered. After careful study we are unable to understand how the findings respecting the conduct of respondent and his attorneys can be disturbed, or how, regarding the findings as verities, the final result awarding respondent over one half of his claim,—in fact much more than, it would seem, could be realized from all assets available to pay it, under any circumstances, can have more than a mere shadow of justification, if even that.

Courts should set a pretty high mark for the judicial test of the business conduct and fidelity of trustees, whose admin-

istration they are in duty bound to supervise.   So far as practicable, the popular idea, which is not without some foundation, that a fund, the conservation of which for the owners is dependent upon judicial agencies, is liable to be largely or wholly dissipated under the forms of law before reaching the point of final distribution, should be eradicated by significant object lessons in good, careful, economical business management.   Severe judicial, mere opinion, condemnation of official unfaithfulness, characterizing the conduct as dishonest and recklessly extravagant, followed by awarding the recreant officer substantial compensation for his worse than useless services, where there is judicial discretion to give or withhold the same, cannot well be justified.   It certainly will not efficiently promote a high standard of fidelity to official duty.   It seems to us that the learned trial court, after so unsparingly and justly, it seems, condemning respondent, as indicated in the statement, treated him with most unwarranted tenderness by the judgment which is complained of.

We are judicially informed that respondent presented to the county court for allowance, in the first instance, an account of $163.05 which was more than seventy-five per cent. dishonest; that such account, with knowledge of the facts, was insisted upon as all valid till expenses in litigation over the matter exceeding $1,100 were incurred, which are included in the final account; that had the respondent performed his duty with reasonable diligence and prudence and in good faith none of such litigation would have been necessary; that the litigation so uselessly entered upon was conducted with such laches as to be entirely fruitless.   With much detail the court decided that all of the items comprising the original account of $163.05, except a few aggregating $42.15, were included therein in bad faith, and it seems here that a part of the $42.15, consisting of $6.15 for an abstract and $7.33 for taxes, related to matters appertaining to the real estate not in

possession of respondent, thus leaving only $28.57 allowable under any circumstances.

Since the legacies and allowed claims of $42.50 were paid before any expense to speak of was incurred in pursuing the real estate, it seems evident that the long, expensive litigation lasting over six years and employing the time of the county court, the circuit and this court to a considerable extent, and resulting in the charges for disbursements and expenses against the estate of over $1,100, to collect a claim which was legitimate only, as indicated, to the extent of $28.57, has no reasonable justification. The trial court was fully justified in concluding that if the true nature of the account, as known to respondent and his attorneys, had been known to those interested in the real estate and to the county court, before the litigation was entered upon, and reasonable business judgment had been exercised by respondent and his advisers in handling the matter, the amount justly due would have been paid. The only asset available for its payment was an interest in real estate worth, according to the appraisal filed by the administrator in 1893, somewhere around $700. The whole title was worth $1,675. That was subject to a mortgage for $200 and some back interest and taxes. The one-half in remainder willed to Mary Ann Brown, to be hers in possession after the termination of a precedent life estate, was the only property chargeable with the claim. So it was not very material, from a pecuniary point of view, to respondent whether his account was allowed in full or at fifty per cent. thereof, since the latter was all he could probably collect. Consistent with that, though the claim was condemned as over fifty per cent. bad because of most reprehensible maladministration, the administrator was content not to appeal.

The findings, as perhaps is sufficiently indicated in the statement, make out about as bad a case of unfaithful administration as can be imagined. They do not seem to leave any ground to stand on in defense of the judgment complained of.

Here, in the language of the trial court, is its general characterization of respondent's conduct:

"The administrator acted in bad faith and not for the benefit of the estate; but on the contrary to its injury, in so far as he sought to enforce, by sale of the land, the payment of those particular items amounting to $120 as to which I have hereinbefore held that the same are not lawful charges in his favor against this estate and which make up in part said sum of $163.05. His efforts to secure payment of such items have been involved in all the litigation which has been carried on respecting the sale of the lands, and from the beginning to the end of that litigation he insisted, as he now insists, on the payment to him, from the estate, of those said items, which he is not entitled to recover. I also find that he is chargeable with laches and negligence in the performance of his duties which have unnecessarily and unreasonably delayed the settlement of the estate, and which have rendered ineffectual, and barren of any results other than protracted and expensive litigation, his efforts to effect a sale of the land."

A careful study of the record seems to fully warrant that condemnation. It will do no good to go over the case in detail for the purpose of showing the reasons for thus holding.

We shall not discuss the items of the account or refer to them further than to point out such as, by statute, respondent is entitled to have allowed as a matter of right. There are some allowances to an administrator which are entirely beyond the reach of discretionary interference. *In re Fitzgerald,* 57 Wis. 508, 15 N. W. 794; sec. 3929, Stats. 1898. First, he is allowed all necessary expenses in the care, management, and settlement of the estate. Second, he is allowed $1 per day for his personal services, and a commission on the amount of personal estate collected and accounted for by him, and the proceeds of real estate sold by him under the orders of the court. Third, he is allowed such further sums in case of unusual, difficult, or extraordinary services as the county court shall judge reasonable. Fourth, he is entitled to have allowed all judgments for costs rendered against him which the court

rendering the same shall direct to be paid out of the estate, and he is entitled to a direction to that effect or an adjudication that it is omitted because of bad faith or mismanagement on his part. Sec. 2932, Stats. 1898.

It will be observed that under the first head mentioned it was the duty of the court to disallow all charges for expenses not shown to have been necessarily incurred in the care, management, and settlement of the estate; and that under the third head it was its duty to disallow all claims for compensation for services, except such as were honestly rendered to promote reasonably some object beneficial to the estate. Under the first of such heads we are unable to discover any charge in the administrator's account, except the items of printer's fees, aggregating $6.40, and an item of $2 for appraiser's fees. As there is a charge for appraiser's fees in the proceedings to sell the real estate separate from the $2 item, we assume that the latter relates to the appraisal of the real estate upon the filing of the administrator's inventory. Under the second head we find an item of $15 for fifteen days' personal services of the administrator. We do not see that any of the judgments for costs come under the fourth head. Two of them were rendered in favor of the administrator. Two were rendered against him, but it does not appear that they were directed to be paid out of the estate, as required by practice. *Hei v. Heller,* 53 Wis. 415, 10 N. W. 620; *Ladd v. Anderson,* 58 Wis. 591, 17 N. W. 320. Thus we find but $23.46 charged in the account absolutely allowable to respondent. The balance of the charges involve the question of whether they were necessary in the proper management of the estate, or whether, as to judgments, they were ordered paid by the court rendering the same out of the estate, or whether, in respect to extraordinary services, justice requires the allowance thereof under all the circumstances.

We cannot, consistently with the fact that over eighty per cent. of the claim which lay at the foundation of the pro-

longed, expensive, and fruitless litigation was fictitious, and over seventy-five per cent. of it was sought to be recovered in bad faith, and that the very small amount which was valid could by reasonably prudent management have been collected without litigation,—hold that any of the expenses incurred in trying to make the collection out of the real estate were necessary, within the meaning of the statute. In face of the facts found that bad faith and inexcusable improvidence and laches characterized the litigation,—that it was started without adequate cause and conducted in such a way as in the end to render it entirely useless, we cannot see that any of the expense thereof can be by the exercise of judicial discretion properly allowed. Expenses dependent upon judicial discretion should always be rejected where they are the result of bad faith or inexcusable negligence. The allowance of such expenses is not authorized by statute nor independently thereof. Woerner, Administration, § 516. That condemns every item of respondent's claim, except the small amount of $25.40.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to render judgment in accordance with this opinion.