WILL OF LEONARD: LEONARD and another, Appellants, vs. INGRAM, Executor, Respondent.

*April 3—June 23, 1930.*

*Fred Arnold* of Eau Claire, for the appellants.

For the respondent there was a brief by *G. Earle Ingram* and *Farr & MacLeod,* all of Eau Claire, and oral argument by *Arthur W. MacLeod.*

The following opinion was filed April 29, 1930:

FRITZ, J.   On February 13, 1906, J. G. Leonard died testate, survived by his widow, and two sons by a former marriage, named Frank E. and Roy, who resided at Dubuque, Iowa, and Grand Rapids, Michigan, respectively. The deceased's will, after providing for the payment of his debts and all charges, gave the widow the sole use, benefit, and control of all of testator's property, and of all income therefrom, during her life, if she remained unmarried, with the right, if the income was insufficient for her support and maintenance, to dispose of such property as should be necessary for those purposes.   The two sons were given all of the estate remaining after the death of the widow, or, in the event of her remarriage, the residue at that time was to be divided in equal shares between the sons and the widow.   No person was designated as executor or trustee.

A proposed contest on the will was compromised by an oral agreement between the three beneficiaries, under which each son was to receive $1,000 as an advancement, and the widow was to receive a $100 government bond, and $100 per month as the widow's allowance, permissible under the statute during administration of the estate.   Respondent claims that it was also agreed that the widow was to receive $1,000 at that time, but that item is in dispute.

On March 1, 1906, the will was admitted to probate in the county court of Pepin county, and, by consent, respondent was appointed executor.   On March 2, 1906, he filed his bond and qualified.   On March 6, 1906, by consent of all parties, respondent was appointed as trustee under the will, and required annually to render account and to settle his

account with the court at the expiration of the trust, and to pay and deliver all balances to persons entitled thereto. On March 7, 1906, respondent filed his bond as such trustee. On June 5, 1906, respondent filed an inventory of real property appraised at $4,130 and personalty appraised at $19,803.75, making a total of $23,933.75. On that date the court also ordered the payment of $100 per month to the widow during the settlement of the estate. To that total of $23,933.75 the trial court in its findings properly added $69.40 for cash on hand (but omitted from the inventory) and $750 collected on two notes (inventoried but reported as worthless), so that the total value of the corpus of the testator's estate, as found by the trial court, was $24,753.15.

In September, 1906, claims against the estate, including inheritance tax, were adjusted at $1,171.43 and paid by the respondent. He also paid the agreed advancements of $1,000 to each of the sons, and delivered the $100 bond to the widow. In addition the trial court allowed respondent credit for $1,000 which he claimed that he had paid to the widow by virtue of the alleged agreement between the heirs, although there is considerable occasion to question the existence of such an agreement as well as the fact of such payment. And the trial court also allowed an additional deduction of $1,200 from the corpus on account of the payment of the widow's allowance of $100 per month for the first twelve months, although primarily and presumably that allowance was to be paid out of the income and not out of the corpus of the estate. However, those deductions from the corpus aggregate $5,471.43, which, deducted from $24,753.15, the appraised value of the estate, left $19,281.72 as the net value of the estate which the executor and trustee was to administer. *Prima facie* he is chargeable with the appraised value of the personalty (sec. 317.02, Stats.), and, as he received more than the appraised value of the real

estate, he should have accounted for at least the sum of $19,281.72 in the manner and within the time prescribed by secs. 313.13, 313.14, and 317.05, Stats. Gary, Probate Law, § 752; *Will of Hurley,* 193 Wis. 20, 213 N. W. 639.

In November, 1906, the time expired within which the executor was required, under sec. 313.13, Stats., to render an account of his administration to the county court. No such account was ever filed or rendered by the respondent until after a citation for his removal was issued by the county court on May 22, 1926. On July 2, 1907, on the respondent's petition as executor, there was an order and notice of final settlement, but there were no further proceedings pursuant to that notice, and there never was any formal settlement or cut-off of the executorship, or transfer of the estate to the trustee, and he never filed an inventory as trustee until August, 1926.

In May, 1918, the widow procured a citation for the removal of the respondent as trustee, and in that connection petitioned for the payment of $500 for support, claiming that she had not been paid any allowance for three months. Respondent, upon counter charges, cited the widow to disclose and account for assets belonging to the estate. Thereupon respondent, without accounting or disclosing the true state of affairs to the three beneficiaries of the trust, induced them to sign a stipulation which provided that during the rest of her life the widow was to receive but $65 per month as her income from the estate, and she was not to make any further claim in any event upon said estate or the trustee thereof; "that the net principal of said estate as determined by the court, less a certain bond of $100 and the sum of one thousand dollars previously paid upon agreement to each of said legatees, be upon the demise of said Lucy M. Leonard assigned to the said Frank E. Leonard and Roy Leonard, according to the terms of said will, and that they release all claim to any income prior to said time, to wit,

the demise of said Lucy M. Leonard, which may be derived from said estate; that the proceedings now pending in said court be dismissed and discontinued, and that the said C. A. Ingram continue as trustee of said estate with full and complete power and authority to control and handle the same. . . ."

On October 18, 1918, the county court, without any investigation, approved that stipulation and entered an order to effectuate its provisions. The circuit court found:

". . . That there was no fraud or concealment practiced upon said parties by the executor and trustee, and that said Frank Eugene Leonard and said Roy Leonard are now precluded from questioning any of the acts of the executor and trustee from the time of his appointment until the date of the signing of said stipulation, namely, September 11, 1918, and that so far as this proceeding is concerned they are now estopped from questioning the real status of said estate at the time of the signing of said agreement and stipulation; and that the aforesaid stipulation and order .of the county court of Pepin county are conclusive upon all of the parties to this action."

Those conclusions we do not approve. Respondent was the attorney and legal adviser of all of the parties to the stipulation, and he was also the trustee. His fiduciary relationship and his superior intellectual attainments and experience were such that the *cestuis que trust* were entitled to repose the fullest confidence and trust in his advice and judgment. In assuming the trust it was his obligation to act honestly and fairly, in the strictest good faith, and without any pecuniary advantage to himself out of the trust estate to the disadvantage of the beneficiaries.

"No rule is better established than that, if a trustee or a person standing in relations of trust and confidence to another deal with the *cestui que trust* or such other in respect to the subject of such trust, for his own benefit or that of others whom he represents, serving two persons at the same

time, in form, when in contemplation of law he can serve but one loyally, the transaction cannot be upheld if called in question by the *cestui que trust,* unless the trustee is able to prove to the satisfaction of the court by clear and satisfactory evidence that the two were at arm's length in the transaction, that no confidence was reposed in him by the beneficiary, that the bargain was profitable to the beneficiary, and that he was fully informed in regard to the value of the property and the nature of his interest in it." *Ludington v. Patton,* 111 Wis. 208, 239, 86 N. W. 571.

Transactions for the personal advantage of a trustee who is also the attorney for parties inexperienced in the law are even more improper than similar dealings between laymen for the reason that such transactions are presumably made under the influence, if not the pressure, of the legal advice, and are usually induced by confidential relations which ought to be above suspicion. To sustain them at all, such a trustee, who seeks advantage or profit thereunder, must, above all, establish that there was a full and complete disclosure and explanation on his part of all facts essential to an intelligent understanding by the beneficiaries of the subject matter and consequences of the transaction. That does not appear to have been done by the respondent. The shockingly overreaching effect of the stipulation, in so far as it purports to absolve the trustee for the twelve years which had then elapsed, and for the prospective remainder of the widow's lifetime, from the important trust obligation of accounting periodically, and further purports to divest the widow of her right to income which had theretofore accrued in excess of the amount which the trustee had paid to her, and to all income thereafter accruing in excess of the $65 per month to be paid to her—all of which excess income the trustee now claims for himself by virtue of the stipulation,—was such that it should not have been approved by the county court. Instead, the submission thereof should have sug-

gested to the county court the necessity of examining its records and files, a mere casual inspection of which would have disclosed the gross dereliction of the trustee. Courts should zealously protect and preserve estates placed by the law under their control.

". . . The standard of care in protecting property rights under judicial control, in the administration of trusts, depends upon the conceptions of duty by trial judges and the pains taken by them to make the same effective." *Sloan v. Duffy,* 117 Wis. 480, 486, 94 N. W. 342.

In this instance, upon being apprised of the continued failure of the executor and trustee, for twelve years, to render any account, the court, upon its own motion, should have immediately cited the respondent to render an account. *In re Campbell,* 12 Wis. *369. However, in view of the conclusions hereinafter stated, the stipulation of September 11, 1918, is of no material consequence, as far as the appellants are concerned. As remaindermen under the will, they were not entitled to the income of the estate until after the widow's death. On the other hand, no demand for an accounting by the respondent has been made on behalf of the widow or of her estate in relation to the income prior to her death.

On October 13, 1925, the widow died and the trust terminated. On October 16, 1925, the remaindermen asked the respondent for an accounting and distribution, and thereafter they repeated the request in personal conferences and correspondence. As respondent failed to account, the remaindermen filed a petition in the county court for his removal, and a citation was issued on May 22, 1926. Commencing in August, 1926, and continuing until November 13, 1928, during extended hearings in the county court and during the trial on appeal in the circuit court, the respondent served on appellants' counsel a series of overlapping and supplementary accounts and statements, which

cover some 140 pages of the printed case and present a confusing maze of figures, without any fair explanation or means of audit. Some of those statements report the astounding contention that not only has the entire corpus been consumed, but that the estate is heavily indebted to the respondent, in an amount variously reported by him at from $13,111 to $19,865. Although he was accorded abundant opportunity during extended hearings in the county court, and on appeal in the circuit court, to establish by credible evidence the integrity of his accounts, he failed to do so. Instead of taking advantage of his days in court, he sought to take advantage of the appellants by virtue of the manner in which he had deliberately neglected and befogged the trust affairs. The learned circuit judge was well warranted in finding:

"That the executor and trustee was a lawyer of long experience and extensive practice in matters of this kind; that notwithstanding the plain provisions of the statutes and the rules and practice of the court and notwithstanding that the estate and the trust were both comparatively simple, he has wholly failed to comply with the plain provisions of the law, and the unusual difficulties confronting the court in this estate are entirely of his own making; that for a period of some twenty years he wholly failed to file any annual accounts and failed to keep the usual and necessary account books and to procure and preserve the usual vouchers and receipts which ordinary good judgment and prudence prompt a layman to keep in the most trivial affairs of life; that he mixed the funds of the estate with his own, loaned money for the use of the estate from the banks and from his own funds at high rates of interest, and in a general sense did many things which a prudent and intelligent trustee should not have done; that he failed to close the estate within one year from the date of his qualification as executor and neglected to thereupon make proper transfer and records from the executor to the trustee; that such conditions continued from the time of the appointment of the executor until about the year 1918; that the appellants,

Frank Eugene Leonard and Roy Leonard, due primarily to their confidence and faith in the trustee and because of their child-like faith and because of their Job-like patience in awaiting their inheritance, apparently acquiesced in such method of the administration of the trust; that because of the foregoing, the various matters submitted to the court herein are hopelessly involved and no exact statement of the true account is possible at this time. . . ."

Because of the trustee's failure and misconduct in those respects, and an improper and unauthorized investment, the court rightly found that the respondent was guilty of gross negligence in the administration of the trust estate. However, notwithstanding his flagrant derelictions in duty, the court allowed him $5,745 "as and for attorney's fees and expenses of administration" from the commencement of his trust until September 11, 1918. In that connection the court said:

". . . The allowance thereof is a liberal one to say the least, but must be accepted by the court at this time because of the gross negligence of the executor and trustee hereinafter outlined, and he is allowed that sum, therefore, for said reasons."

As to that matter the learned circuit judge was in error. The uncertainties in respondent's accounts, which are due to his gross negligence, did not necessitate the acceptance as verities, and the allowance, of his unverified and unexplained claims for fees and expenses. It is well established that—

"A trustee or executor is bound to keep clear, distinct, and accurate accounts. If he does not, all presumptions are against him, and all obscurities and doubts are to be taken adversely to him." Perry, Trusts and Trustees, § 821.

"Where the relation of trustees and *cestuis que trust* is admitted or clearly established, the *cestuis que trust,* as the true owners of the fund, have the right to the production and inspection of all the documents and papers relating to it." Perry, Trusts and Trustees, § 822.

"A trustee ought to keep a regular account of his expenses, and if he does not do so, every intendment of fact will be made against him, and the lowest estimate put upon his charges for expenses." Perry, Trusts and Trustees, § 911.

"Want of fidelity forfeits a trustee's right to compensation on obvious principles of justice. Hence, if the trustee is dishonest, or unfaithful, or negligent, or reckless in the performance of the duties of the trust, no compensation will be allowed. Thus a trustee's compensation will be forfeited where he makes use of the trust funds in his own business, or neglects to invest, or permits his bailee to waste, the funds, or fails to keep proper accounts and make proper settlements or returns, and it seems, however, that although it is the general rule to refuse compensation for a failure to keep proper accounts, yet it is not universal." 26 Ruling Case Law, p. 1393, § 259.

"Courts should set a pretty high mark for the judicial test of the business conduct and fidelity of trustees, whose administration they are in duty bound to supervise. So far as practicable, the popular idea, which is not without some foundation, that a fund, the conservation of which for the owners is dependent upon judicial agencies, is liable to be largely or wholly dissipated under the forms of law before reaching the point of final distribution, should be eradicated by significant object lessons in good, careful, economical business management. Severe judicial, mere opinion, condemnation of official unfaithfulness, characterizing the conduct as dishonest and recklessly extravagant, followed by awarding the recreant officer substantial compensation for his worse than useless services, where there is judicial discretion to give or withhold the same, cannot well be justified. It certainly will not efficiently promote a high standard of fidelity to official duty." *Mackin v. Hobbs,* 126 Wis. 216, 222, 223, 105 N. W. 305.

"Expenses dependent upon judicial discretion should always be rejected where they are the result of bad faith or inexcusable negligence. The allowance of such expenses is not authorized by statute nor independently thereof. Woerner, Administration, § 516." *Mackin v. Hobbs, supra,* p. 227.

In the *Mackin Case* this court, following *In re Fitzgerald,* 57 Wis. 508, 15 N. W. 794, concluded that there are some allowances to an administrator which, in view of sec. 3929 (now sec. 317.08), Stats., are entirely beyond the reach of discretionary interference by the court. However, it is significant that at the very next session of the legislature after the decision in the *Mackin Case,* sec. 3929, Stats., relating to allowances to executors and administrators for expenses and services, was amended (sec. 5, ch. 660, Laws of 1907) by the insertion of the words "unless derelict in his duty." As a consequence, now, when an executor or administrator has been derelict in his duty, the matter of an allowance for his necessary expenses and services and for commissions is within the sound discretion of the court. When, as in the case at bar, a record abounds in evidence of bad faith and gross and inexcusable negligence or wilful dereliction, such allowances as are demanded in this matter should, in the exercise of sound judicial discretion, be rejected.

Consequently, the allowance of $5,745 for the respondent's fees and expenses was improper, and cannot be deducted from the net value of the corpus of the trust estate, viz. $19,281.72, for which he must account to the remaindermen.

The respondent is entitled to credit for certain loans and advancements which he made to the remaindermen. The amounts thereof are in dispute, and the uncertainty is again augmented by the respondent's failure to currently keep and render proper accounts. Under the evidence and circumstances there is no occasion for disturbing the trial court's findings that the respondent's total loans and advancements were $4,817.42 to Frank E. Leonard and $2,050 to Roy Leonard. Those amounts are to be deducted from the respective shares of the remaindermen upon distribution of the trust estate.

The trial court also allowed credit to the respondent for interest on the loans to the remaindermen from the date of

the stipulation of September 11, 1918, to the death of the widow. For reasons hereinbefore stated in considering that stipulation, the respondent cannot profit thereby at the expense of the remaindermen. They may have been liable for interest on their loans during that period, but that liability was primarily for the use and benefit of the widow, and was not enforceable for the personal use or profit of the respondent. On the other hand, from the time of the death of the widow the remaindermen are entitled to the payment by the trustee of simple interest on their balances of their shares of the estate.

Respondent also assigns as error the court's conclusion that he is chargeable for certain trust funds improvidently invested by him in real estate in a distant county. The evidence amply supports the court's finding that the security was inadequate to justify the investment of trust funds, particularly inasmuch as the terms of the will conferred no authority to make such investment and it was made without the approval of the county court. Those findings well warrant the trial court's conclusions as to that unauthorized and improvident investment. *Estate of Allis,* 191 Wis. 23, 209 N. W. 945, 210 N. W. 418.

Respondent further assigns as error the court's order allowing $240 to appellants on account of their attorney's fees and certain expenditures incurred in prosecuting this litigation. As authority for that allowance, the appellants rely on sec. 317.04, Stats., in so far as it provides:

"When an executor or administrator shall neglect . . . to pay over the money he shall have in his hands, and the value of the estate shall thereby be lessened or unnecessary cost or interest shall accrue, or the persons interested shall suffer loss, the same shall be deemed waste; and the damages sustained may be charged against the executor or administrator in his account. . . ."

It would seem that the purpose of that statute is to subject an executor, at the time of his accounting, to charges for

loss which is in the nature of waste to the estate. The chargeable items contemplated by the statute are such damages to the estate as resulted by reason of diminution in the value thereof, or because of interest or cost incurred in conserving the estate which but for the delay would have been unnecessary. If by reason of such items the persons interested shall suffer loss, then "the same shall be deemed waste and such damages may be charged against the executor or administrator." The statute does not authorize charging against the respondent those expenses of this litigation, and the items aggregating $240 must be disallowed.

The judgment must be reversed, because it is erroneous, in so far as it relates to the amount of the residue of the estate which is ordered assigned and distributed to appellants. In that respect the judgment should provide that respondent will be required to distribute to each of the appellants one half of $19,281.72 (which was the net corpus of the trust estate), subject only to a deduction of $4,817.42 from the share to be paid by respondent to Frank E. Leonard and a deduction of $2,050 from the share to be paid to Roy Leonard. On the respective balance to which each appellant is entitled, the respondent shall pay interest at the rate of six per cent. per annum from October 15, 1925. In all other respects the provisions of the judgment heretofore entered were proper.

*By the Court.*—Judgment reversed, with directions to enter judgment as indicated in this opinion, and with costs to appellants.

A motion for a rehearing was denied, with $25 costs, on June 23, 1930.