142

STATE, Plaintiff, vs. INGRAM, Defendant.

*May 12—June 6, 1933.*

For the plaintiff there was a brief by *Spencer Haven* of Hudson, counsel for the Board of State Bar Commissioners, and oral argument by *Ferris M. White* of River Falls, president of the Board of State Bar Commissioners.

*Henry Lockney* of Waukesha, for the defendant.

PER CURIAM. The complaint contains nine counts, all growing out of defendant's conduct as executor and trustee of the estate of J. G. Leonard, deceased. J. G. Leonard died in February, 1906, leaving a will by which he gave the sole use, benefit, and control of all his property to his widow, Lucy M. Leonard, during her natural life, with power in her to sell and dispose of so much of the property as might be necessary for her support and maintenance. She was testator's second wife. Frank E. Leonard, of Dubuque, Iowa, and Roy Leonard, of Grand Rapids, Michigan, sons of testator but not of Lucy M. Leonard, were residuary legatees, sharing equally. No executor was named in the will. The complaint in its various counts deals with the handling of the estate thus devised, over a long period of years. The relations of the defendant to this estate have been the subject of two appeals to this court,—the first, *Will of Leonard,* 202 Wis. 117, 230 N. W. 715, and the second, *Newcomb v. Ingram,* 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171. These cases contain complete and accurate recitals of the facts concerning this estate, and these will not be repeated here.

*Count one* charges that the defendant depleted the corpus of the estate by $3,000. This was the result of three payments of $1,000 each made March 2, 1906, to the widow and to Frank and Roy Leonard. These payments were made by defendant as executor as the result of an agreement between the beneficiaries and contrary to the terms of the will,

resulting in the depletion of the estate and the violation of his duties. The payments, however, were made prior to the case of *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, to the persons solely interested in the estate, who were *compos mentis,* and perhaps is not enough, standing alone, to warrant more than a reprimand.

*Counts two and three* charge that the defendant failed to close up the administration of the estate in one year, or even in the six-year period, and failed for twenty years to render any account to the court or to the parties interested. The referee finds the defendant to have been grossly negligent and derelict in his duties in this respect, and that was the judgment of this court upon his conduct in *Will of Leonard, supra.* There can be no question of the correctness of the finding. Sec. 323.01, sub. (2), reads as follows:

"To annually render an account to such court of the trust estate in his hands, of the management, disposition, and annual income thereof."

The law required the defendant annually to render an account to the court of the estate in his hands. So, likewise, did the bond given by defendant. In the face of these requirements, the defendant alleges in paragraph ten of his answer that there is no statute or other requirement in this state requiring the filing of accounts, annually or otherwise, of trustees under a will until the end of the trust. His conduct at least evidences gross neglect of his duties or complete misunderstanding of his function as executor and trustee.

*Count four* charges the defendant with being grossly negligent in failing to keep any adequate or proper books of account with reference to the estate. The referee finds that the defendant kept some sort of books until 1918, and then loaned them to W. H. Smith, brother of the widow, and that they were not returned to the defendant and he did not miss them until 1926, a period of eight years. The referee concludes that defendant was grossly negligent in failing to

keep proper books and in failing to keep possession of the books which he did keep. In respect to this count the referee also finds that in the month of August, 1926, the defendant made four different statements of what was due him from the estate; that the first was $13,111.78; the second, seven days later, was $15,360.71; the third, three days later, was $19,865.82; and the fourth, three days later, was $14,611.78, showing a great discrepancy between the figures and indicating at least the results of a failure to preserve vouchers and keep proper accounts. This failure so involved the affairs of the estate that no exact statement of the true account was possible. Similar comment was made in *Will of Leonard, supra,* at page 125, and the defendant severely criticized for conduct which resulted in his inability to strike an accurate balance.

*Count five* relates to an agreement made in 1918 between the defendant, the widow, and the two sons. In 1918 defendant was cited by the court to render an account and show cause why he should not be removed from his trust. He negotiated an agreement with the widow and sons whereby the widow was to accept $65 per month thereafter instead of the entire income of the estate, the sons were to accept upon her death the corpus of the estate, and defendant was relieved of his obligation to account. The referee finds that he failed to make any disclosure to the widow or to the court of the facts, and that in any event the agreement was in violation of the terms of the will. The court, in *Will of Leonard,* comments extensively upon this transaction. It condemns the stipulation as an attempt by defendant to take advantage of the parties, and as constituting a violation of his duties as trustee. In this connection it should be noted that the defendant, in *Will of Leonard, supra,* deliberately argues that the representatives of the widow, as a result of this stipulation, had no interest in the corpus of the estate, and that the sons had no interest in the portion of the estate which represented the difference between the corpus and the

amount paid out as income to the widow. In the brief of the defendant it was stated: "Evidently appellants feared the widow (their stepmother) might use some of the principal, under the terms of the will, which induced them to stipulate with her that she would have only $65 per month as the net income, without further claim on the estate or trustee; it was further provided the trustee would only have to account to appellants for the principal of said estate, upon the death of the widow. Therefore appellants have no right to an accounting except as to the income of the estate after the death of the widow on October 13, 1925."

This is an argument to the effect that any balance of the income during the life of the widow was intended by the stipulation to belong to the defendant, or at least that this was the legal effect of the agreement. Such a contention evidenced not merely a lack of understanding of the duties of a trustee to the *cestuis,* but a willingness to deal at arm's length with them and to overreach them in the matter. In addition to this the agreement excused the defendant from any obligation to account, and was entered without disclosure to the parties of the facts. It would seem a task of supererogation to make extended comment upon such conduct. If comment is needed, this court has sufficiently discharged the requirement in the opinion in *Will of Leonard, supra.*

*Counts six and seven* relate to loans made by the defendant of trust funds to the Leonard boys. This was concededly an improper use of trust funds and entirely unwarranted. It further evidences a lack of understanding and care on the part of defendant of his duties.

The referee also finds that the mortgage made to Taylor and Mason in Jefferson county was in a distant part of the state, without adequate security, and resulted in an ultimate loss of over $8,000 to the estate. This loan is also criticized in *Will of Leonard, supra.*

*Count eight* charges, and the referee finds, that after the death of the widow on October 13, 1925, terminating the defendant's trust, the defendant failed to render and file his account and wind up the matter of his trusteeship; that Frank E. Leonard and Roy Leonard, beneficiaries, were compelled to bring proceedings to compel the rendering of an account, and that extended litigation in the county, circuit, and supreme courts has been the result. There can be no question as to the truth of the charges in count eight. The confusion into which the affairs of this estate were thrown by defendant's conduct is a matter with which this court is quite familiar, having had the burden of attempting to make some coherence out of defendant's accounts in the process of deciding the cases of *Will of Leonard* and *Newcomb v. Ingram, supra.*

*Count nine* is to the effect that the defendant has withheld since 1926 from the Leonard sons a total of $11,964.30, in addition to certain stocks that were to be turned over in specie to the Leonards, compelling them to resort to litigation. The referee finds that it does not appear that the defendant mingled any of the trust funds with his own money, or that he profited personally by his dealings out of the trust fund, unless he received net income from the estate to which the widow was entitled over and above $65 a month from September 11, 1918, to October 13, 1925, and the referee finds that there is no proof that he received or converted any such portion of the income. The referee finds that defendant did engage in some commendable activity with respect to collecting assets of the estate.

Finally, the referee finds defendant to be sixty-five years of age and in ill health; that he has hopes of making restitution, but that it is highly improbable that he will ever be able to do so; that he hopes to realize $3,500 to $4,000 out of the property included in the Taylor-Mason loan in Jefferson county, which he was required to take as a part of the

accounting, and a willingness to turn this over to the bonding company or to the Leonards.

As heretofore indicated, the counts all relate to the discharge by defendant of his duties as executor and trustee of the same estate. They are stated in chronological order and, considered together, cover the entire period of defendant's relations to the estate and to the beneficiaries under the Leonard will. Hence it may be proper, and perhaps it will be more useful, to comment upon the charges as a whole.

It is beyond doubt that the most charitable view that can be taken towards defendant is that his conduct evidenced a complete lack of appreciation of his duties, and that he discharged his functions as executor and trustee with gross incompetence and negligence. The whole matter evidently was considered by defendant to be one for disposition by private negotiation rather than by following procedures prescribed by law. With such a starting point it is not surprising that defendant should ultimately deal with the parties as an ordinary contractor rather than a trustee, and at arm's length rather than with that meticulous fairness called for by his legal relations to them. Such a view leaves out of consideration the more sinister inferences that may reasonably be drawn. The failure to account; the stipulation which leaves a portion of the estate undisposed of; the contention in this court in the *Leonard Will Case* that defendant had no obligation to account for this portion; the filing of four separate and different claims against the estate in a single month, the largest almost depleting the remainder and each of them approaching this result,—these facts, taken together, would support the verdict of a jury or the finding of a court that defendant deliberately sought to convert large portions of the estate to his use, or that much of the conduct which a more lenient view would attribute to negligence or lack of understanding was part of a scheme to force a settlement, first with the widow and remaindermen, and finally with the remaindermen alone, that would be unfair to them

and advantageous to him. The circumstances that make it impossible either to convict or to vindicate defendant with complete certainty are of his own creation. In his hands the affairs of the estate have become so hopelessly entangled and badly accounted for as to leave merely a jury question as to defendant's motives. While on the one hand it may be said that defendant's previous good reputation and his years of service in public office and at the bar ought to weigh in favor of an innocent construction of his motives, it is difficult to ascribe the conduct of a man of his years and experience entirely to gross incompetence and carelessness. The referee has found as a fact that defendant had no intention to profit at the expense of the estate, and that he did not so profit. Approval of such a finding cannot be given without serious misgivings, but it is recognized that there is support in the evidence for such a conclusion. Assuming, however, that it can be supported, and ascribing to defendant's conduct the most innocent interpretation of which it is capable, it is our conclusion that the period of suspension is too brief adequately to meet the requirements of this case. The gross negligence of the defendant and his complete failure to appreciate the nature of his fiduciary character and its duties has caused him to fail dismally in the discharge of one of the most sacred obligations that a lawyer can assume. This calls for more severe disciplinary action than that recommended. While the defendant's age, his financial situation, and his years of public service make a strong appeal to our sympathy, we cannot be deterred from a proper course because of this fact.

It is the conclusion of the court that defendant's suspension from the practice of law should be for a period of two years, and that as a condition to an application for reinstatement defendant must pay the costs of these proceedings.

*By the Court.*—It is ordered and adjudged that the defendant, Charles A. Ingram, be suspended from the practice of law for a period of two years from the date of the entry

of this order, and for such period thereafter as shall expire before his license to practice law is restored and he is reinstated as a member of the bar by this court, upon the presentation of proof that the expenses of this proceeding have been paid, and upon the further condition that he shall, before being reinstated, satisfy the court both by his conduct from this time forward and by assurances then given the court that he will not, if reinstated, be guilty of such conduct as that involved in the charges made in the complaint in this action.